803 F.2d 713
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Stephen P. CLIFFORD; Margaret W. Clifford; G. David
Jones; John C. McMaster, Jr.; Laura F. McMaster; Donald
S. Raines; Randall Scott Smith; Roger Allan Smith; Edward
M. Whitlock; Badge-A-Minit, Ltd., Appellants,
C.T. Associates, Inc., Plaintiff,
v.
WILD DUNES ASSOCIATES, a Partnership; David Henry Lucas,
James G. Boyd, Noel D. Thorn, Henry L. Holliday, III,
General Partners Associated and in Business under the Common
Name and Style of Said Partnership; WDOC Associates, a
Partnership; Wild Dunes Associates and R/WDOC, Inc., General
Partners Associated in Business under the Common Name and
Style of said Partnership, Appellees.
 No. 85-1722.
 United States Court of Appeals, Fourth Circuit.
 Argued June 3, 1986.
Decided Oct. 10, 1986.
 
 J. Randolph Pelzer (Pelzer & Chard, P.A., on brief), for appellants.
 H. Brewton Hagood (Morris D. Rosen, Rosen, Rosen & Hagood, Fishburne & Gaillard, on brief), for appellees.
 D.S.C.
 AFFIRMED.
 Before PHILLIPS and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This action in the diversity jurisdiction involves claims by the plaintiffs, owners of beach-front condominiums, that their views of the ocean had been blocked, in violation of various common law and statutory rights, by defendants' construction of a building on adjacent land. The district court dismissed all the claims on motion for summary judgment. On plaintiffs' appeal, we affirm.
 
 
 2
 * Plaintiffs are individuals who own, either individually or jointly, six of twelve condominiums in Building G of Port O'Call Horizontal Property Regime on property of the Wild Dunes Beach and Racquet Club on the Isle of Palms, South Carolina. Defendants are Wild Dunes Associates, WDOC Associates and individual, partnership, and corporate partners in the two named partnerships. They own property adjoining that on which plaintiffs' condominiums are located. The building allegedly obstructing plaintiffs' views, Seascapes Villas, is located on this adjoining property.
 
 
 3
 Plaintiffs and defendants derived their titles to the properties here in issue by a complex series of transactions, whose essentials are critical in the dispute here in issue. The Isle of Palms Beach and Racquet Club was the original developer of all of the property in question. By recorded deed on October 27, 1980, Isle of Palms Beach and Racquet Club sold some of its property to Port O'Call Limited Partnership and Edward Ginn as general partner. Port O'Call Limited Partnership and E.R. Ginn & Associates proceeded to develop and build the Port O'Call Horizontal Property Regime on this property. The eight plaintiffs later purchased their six Port O'Call condominiums in Building G from the Port O'Call Partnership and Ginn between the dates of April 4, 1981, and May 27, 1981.
 
 
 4
 After the sale of the Port O'Call property to the Port O'Call Limited Partnership, Isle of Palms Beach and Racquet Club transferred to Finch Properties a twelve-acre tract adjoining the tract earlier sold to Port O'Call. Around April 6, 1981, Finch Properties sold this property to Salt Water Lake Investment Company, a Partnership. Salt Water Lake Investment Co., therefore, was the owner of the Seascape property at the time the plaintiffs purchased their Port O'Call villas.
 
 
 5
 In late 1983, Mr. Finch, on behalf of the Salt Water Lake Investment Co., began negotiations to sell the twelve-acre tract of land where Seascapes is now located to Wild Dunes Associates (Wild Dunes).
 
 
 6
 Around March 1, 1984, the partners in Salt Water Lake Investment Co. assigned and transferred all their interest in the partnership to Wild Dunes. Shortly after this transfer, wild Dunes contracted to purchase the stock of the original developer, Isle of Palms Beach and Racquet Club, from the Finch family. On the same day, wild Dunes conveyed the twelve-acre tract to WDOC Associates, a South Carolina Partnership of which Wild Dunes is a 50% owner. WDOC Associates began building the Seascapes Villas on this tract in May of 1984.
 
 
 7
 While Salt Water Lake Investment Co. and Wild Dunes were in negotiations regarding the purchase of the twelve-acre Seascapes property, the Wild Dunes partners developed plans for the construction of the Seascapes condominiums. The original plans contemplated building the villas in a "V" shape, with the point of the "V" closest to the beach. Evidently these plans would have preserved the plaintiffs' ocean view to a significant extent. After purchasing the Seascape land and eventually gaining control over the entire development as the successor to Isle of Palms Beach and Racquet Club, however, Wild Dunes changed the plan for the siting of the Seascapes Villas and inverted the "V." The Isle of Palms City Council gave conceptual approval to the Seascape development on April 11, 1984, despite Finch's strong objections voiced at the meeting regarding the building's impact upon the view enjoyed by owners of Building G of Port O'Call.
 
 
 8
 The inversion of the "V" resulted in a near total obstruction of the plaintiffs I ocean view. Before the construction of Seascapes, the plaintiffs enjoyed a broad view of the ocean from the inside of their villas as well as from their porches. After its construction, most plaintiffs had no ocean view from the inside of their villas and could only see the ocean from their porches "by leaning up over the railing for a very narrow view up a small corridor between the two structures." The plaintiffs contend that as a result of the loss of an ocean view, the resale and rental value of their units has dropped significantly.
 
 
 9
 A number of contractual provisions and covenants in the title instruments involved in these transactions are critical. The contract of sale between the original developer, Isle of Palms Beach and Racquet Club, and Port O'Call Limited Partnership contained the following provisions:
 
 
 10
 18. Except as to providing ingress and egress from Palmetto Drive and water and sewer service,... to the property which is the subject of this Agreement, the Seller, notwithstanding any statements contained in this Agreement and to the contrary, does not warrant in any manner whatsoever, the development of any other properties which are owned by it on the Isle of Palms, whether or not in the general vicinity of the instant property, and reserves the right to develop Properties in developed, in any manner whatsoever without interference from the Purchaser or subsequent grantees of the Purchaser. The Purchaser, its successors and assigns, agrees it understands and shall bring to the attention of any subsequent grantees that the Seller is not obligated to develop any of the properties on the Isle of Palms in any manner whatsoever or to provide any service or facilities, recreational, or otherwise, to the Purchaser, its successors or assigns, notwithstanding the fact that plans or schemes may have been brought to the attention of the Purchaser, its successor or assigns, through public zoning hearings, documents filed with the City of Isle of Palms for zoning purposes, or public or private showings of proposed or preliminary development plans. (Emphasis added.)
 
 
 11
 20. The terms and conditions of this Contract of Sale and Option shall survive delivery of deed.
 
 
 12
 This contract was executed by delivery of a deed (Master Deed) to Port O'Call.
 
 
 13
 The individual contracts of purchase for the Port O'Call condominiums between the several plaintiffs and E.R. Ginn & Associates all stipulated that:
 
 
 14
 9. Warranty--For a period of one (1) year following the date the Villa is accepted from the builder by Seller, Seller will at no cost to Purchaser repair or replace any portion of the Villa, except fixtures and appliances covered by a warranty of the manufacturer or dealer, which is defective as to materials or workmanship. The liability of Seller hereunder is expressly limited to such repair or replacement, and SELLER MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OR [sic] MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURCHASE PURPOSE.
 
 
 15
 13(a). The Purchaser agrees that neither the company nor the Seller have made any pledges, covenants, or commitments in regard to the development of the Isle of Palms Beach and Racquet Club which have induced the purchase of the Property except as stated in this Agreement, the Covenants, and the Proposed Master Deed and By-Laws.
 
 
 16
 13(d). This Agreement supersedes any and all understandings and agreements between the parties and constitutes the sole and entire agreement between the parties. No oral statements or representations whatsoever shall be considered a part hereof. Any modifications must be in writing and acknowledged by the parties hereto.
 
 
 17
 13(h). This Agreement and all terms and conditions hereof shall survive the closing of the transaction contemplated hereby and shall thereafter continue to bind the parties to this Agreement. This Agreement shall be executed in duplicate originals.
 
 
 18
 None of the plaintiffs contracted with any of the named defendants for the purchase of their respective condominium units.
 
 
 19
 All of the plaintiffs' deeds referred to Port O'Call Limited Partnership's Master Deed. The villas were also conveyed subject to "COVENANTS FOR PROPERTIES IN THE ISLE OF PALMS BEACH AND RACQUET CLUB" dated April 5, 1977. The most pertinent part of these covenants, Article II, Paragraph 4, stipulates that:
 
 
 20
 Since the establishment of standard and inflexible building setback lines for the location of structures on lots tend to force construction of such buildings both directly behind and directly to the side of each other with detrimental effects on privacy, views, preservation of important trees, etc., no specific setback lines are established by these covenants with the exception of Patio Home Sites (zero lot line provisions). In order to assure, however, that location of structures will be staggered where practical and appropriate so that the maximum amount of view and breeze will be available to each Dwelling Unit, that the structures will be located with regard to the ecological constraints and topography of each individual Lot, taking into consideration the elevations of each Lot, the location of large trees and similar considerations, the Company reserves unto itself, its successors and assigns, the right to control absolutely and solely to decide the precise site and location of any building or other structure upon all Lots and every Lot within the Property. Provided however, that such location shall be determined only after reasonable opportunity is afforded the owner to recommend a specific site and provided further, that in the event an agreed location is stipulated in writing to the contract to purchase, the Company shall approve automatically such location for a residence. (Emphasis added.)
 
 
 21
 Seeking to avoid or explain away the apparently unfavorable provisions above identified, the plaintiffs offered evidence that the Isle of Palms Beach and Racquet Club's sales brochures and price lists "promised in writing and placed primary emphasis on, an 'ocean view from villa' "; that the original developer's sales force "orally assured Appellants in response to specific question that any construction on the adjoining property would preserve, to the greatest extent practical, their ocean view and represented to some purchasers that the Covenants for the Wild Dunes Associates development protected the ocean view"; and that the condominiums were sold to them without any discount to reflect any possible blockages of view in the future.
 
 
 22
 The defendants of course offered evidence opposing plaintiffs' version of events extrinsic to the title and contractual documents.
 
 II
 
 23
 Following the building of the Seascapes Villas, the plaintiffs brought this action alleging ten separate claims, all grounded in the blockage of view caused by the construction of the "inverted-V" structure: breach of covenants, obstruction of express easement, obstruction of implied easement, breach of fiduciary duty, violation of the South Carolina Unfair Trade Practices Act, breach of implied warranty, negligence, breach of implied covenants, breach of duty of good faith and fair dealing, and private nuisance. As the district court noted, all of these claims are based ultimately upon the premise that the defendants violated an obligation imposed upon them to preserve the plaintiffs' ocean view and access to ocean breezes.
 
 
 24
 After hearing oral arguments on the defendants' summary judgment motion, the district court granted summary judgment in favor of the defendants, as the pleadings, depositions, and answers to interrogatories on file with the court indicated that there was no genuine issue as to any material fact that would entitle the plaintiffs to recover under any of the theories alleged in their complaint and that the defendants were entitled to judgment as a matter of law..
 
 
 25
 We agree with this result.
 
 
 26
 The plaintiffs' first and primary claim for breach of covenants is premised upon the language in Article II, Paragraph 4 of the "COVENANTS FOR PROPERTIES IN THE ISLE OF PALMS BEACH AND RACQUET CLUB." The plaintiffs maintain that the various assurances concerning "maximum amount of view and breeze," "reasonable opportunity... to recommend a specific site," etc., created an enforceable, affirmative obligation on the part of the defendants to site structures where practical and appropriate, in a way that did provide the "maximum amount of view and breeze" to each dwelling unit.
 
 
 27
 The district court concluded, however, that this guarded, precatory language conferred no such rights upon the plaintiffs, in view of the central, express reservation of "right to control absolutely and solely the precise site and location upon all Lots and every Lot within the Property. " On this basis, the court dismissed the claim of breach of express covenant.
 
 
 28
 The plaintiffs' second count alleged that the defendants breached an express easement of view. The lower court dismissed this count on the basis that the plaintiffs failed to produce any document that would grant such an easement, failed to allege any violations of set back lines in the amended complaint, and failed to show the existence of any easement appurtenant to the plaintiffs' property.
 
 
 29
 The court dismissed the claim for breach of an implied easement of view based upon the well-settled law of South Carolina that there exists no implied easement of unobstructed ocean view, breezes, light or air. Hill v. The Beach Co., 306 S.E.2d 604 (S.C. 1983). This was also the basis for the court's dismissal of Count 8 for breach of an implied covenant. The district court rejected the plaintiffs' fourth count, a claim for breach of fiduciary duty, because no court applying South Carolina law has ever held that restrictive covenants grant a fiduciary relationship between the developers of a tract of land and the owners of adjacent property. The court likewise dismissed the plaintiffs' claim for alleged violations of the South Carolina Unfair Trade Practices Act. S.C. Code § 39-520 (a) (1976). The court concluded that:
 
 
 30
 the defendants did not sell the units to the plaintiffs, nor has there been any showing that the construction of Seascapes Villas in any way violated any set-back regulations or any restrictive covenants.
 
 
 31
 This court can find no activity conducted by these defendants which would come within the scope of those activities forbidden by the Act.
 
 
 32
 Clifford v. Wild Dunes Associates, C/A No. 2:84-1456-1, slip op. at 9 (D.S.C. June 25, 1985).
 
 
 33
 The plaintiffs' sixth count was for breach of an implied warranty of an ocean view and breezes. The district court noted that no contract exists between the plaintiffs and the defendants concerning the purchase of the Port O'Call condominiums. Moreover, the court reasoned that both the South Carolina Supreme Court and Court of Appeals have held that restrictive covenants cannot be a basis of either an express or implied warranty of fitness for residential purpose. Martin v. Floyd, 317 S.E.2d 133 (S.C. 1984).
 
 
 34
 The lower court dismissed the plaintiffs' negligence claim, because they had failed to show any duty owed by the defendants to the plaintiffs with regard to the siting and construction of Seascape Villas. The court rejected the plaintiffs' ninth count, for breach of a duty of good faith and fair dealing, on the basis that there was no contractual agreement between the defendants and the plaintiffs giving rise to such a duty.
 
 
 35
 Finally, Count 10 alleged that the location of Seascapes Villas blocked plaintiffs' ocean view and breezes and thereby interfered with the use and enjoyment of their property, constituting a private nuisance. The district court found that there had been no showing that the location of Seascapes was unreasonable, unlawful, or violated any zoning ordinances, restrictive covenants or set back requirements. Accordingly, the court concluded that the location of the Seascapes Villas could not rise to a level constituting a private nuisance and granted summary judgment in favor of the defendants.
 
 
 36
 This appeal followed.
 
 III
 
 37
 We agree with the district court that on the primary claim in count one for breach of express covenant, the language set forth in Article II, Paragraph 4 of the "COVENANTS FOR PROPERTIES IN THE ISLE OF PALMS BEACH AND RACQUET CLUB" is dispositive against plaintiff. The plaintiffs argue that the district court erred in interpreting this language as a reservation of rights giving the developer absolute control over the siting of buildings. Rather, viewing the paragraph in its entirety, the plaintiffs contend, it is actually a reservation of rights with a covenant duty on the part of the developer to assure the maximum amount of ocean view and breeze to each dwelling unit where practical and appropriate.
 
 
 38
 We disagree and find no error in the district court's judgment that this covenant effectively created only an absolute reservation of siting rights in the developer. while this interpretation leaves the siting of buildings to the developer's unbridled discretion, subject only to certain set-back regulations and restrictive covenants, we nonetheless believe that it is the only permissible interpretation of the covenant language. This absolute reservation of rights negates the possibility of any claims brought under the developer's alleged duty to assure the maximum amount of ocean view and breezes. Accordingly, we affirm the district court's grant of summary judgment on count one in favor of the defendants.
 
 IV
 
 39
 As to all the remaining claims brought by the plaintiffs, we see no error in the lower court's conclusions and therefore, affirm as to each on the reasoning of the district court. Clifford v. Wild Dunes Associates, C/A No. 2:84-1456-1 (D.S.C. June 25, 1985).
 
 
 40
 AFFIRMED.